T.T.

v.

C.E. and T.E.

W.A.T.

v.

C.E. and T.E.

2140910 and 2140911.

Court of Civil Appeals of Alabama.

March 18, 2016.

Lisa M. Ivey, Jasper, for appellant T.T.

Thomas L. Carmichael, Jasper, for appellant W.A.T.

Woodford W. Dinning, Jr., of Lloyd & Dinning, L.L.C., Demopolis, for appellees C.E. and T.E.

MOORE, Judge.

In appeal no. 2140911, W.A.T. ("the father") appeals from a judgment entered by the Marengo Juvenile Court ("the juvenile court") terminating his parental rights to A.T. ("the child"). In appeal no. 2140910, T.T. ("the paternal grandmother") appeals

from the juvenile court's denial of her motion to intervene in the termination-of-parental-rights proceedings. We affirm.

## Procedural History

On June 8, 2015, C.E. and T.E. filed a petition seeking to terminate the parental rights of N.B. ("the mother") and the father.[1] On July 21, 2015, the day of the hearing on the petition, the paternal grandmother filed a motion seeking to intervene in the proceedings and to continue the hearing for 60 days in order for her to hire an attorney to represent her. She alleged that the child should be placed with her as a viable alternative to termination of the father's parental rights. That same day, the juvenile court entered a judgement terminating the parental rights of the parents. On August 4, 2015, the father and the paternal grandmother filed separate postjudgment motions and notices of appeal. The appeals were held in abeyance pending the disposition of the postjudgment motions; the postjudgment motions were denied on August 17, 2015. *See* Rule 4(a)(5), Ala. R.App. P. In denying the paternal grandmother's postjudgment motion, the juvenile court stated, in pertinent part:

> "[The] Motion to Intervene was filed on July 21, 2015, two minutes before the hearing started. The paternal grandmother was in Court on June 26, 2015, when the final hearing was set for July 21, 2015, and delayed filing same until the day of said hearing. Finally, the Court has twice considered the paternal grandmother as a viable custodian for [the child], and denied same. Likewise, the Marengo County Department of Human Resources has also considered her, and recommended against same."

1. The mother signed a consent to the termination of her parental rights; she has not

## Discussion

### Appeal No. 2140911

On appeal, the father argues that the termination judgment was not supported by sufficient evidence.

> " 'A juvenile court is required to apply a two-pronged test in determining whether to terminate parental rights: (1) clear and convincing evidence must support a finding that the child is dependent; and (2) the court must properly consider and reject all viable alternatives to a termination of parental rights. *Ex parte Beasley,* 564 So.2d 950, 954 (Ala.1990).'
>
> "*B.M. v. State,* 895 So.2d 319, 331 (Ala. Civ.App.2004). A juvenile court's judgment terminating parental rights must be supported by clear and convincing evidence. *Bowman v. State Dep't of Human Res.,* 534 So.2d 304, 305 (Ala. Civ.App.1988). 'Clear and convincing evidence' is ' "[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion." ' *L.M. v. D.D.F.,* 840 So.2d 171, 179 (Ala.Civ.App.2002) (quoting Ala. Code 1975, § 6–11–20(b)(4)); *see also Ex parte McInish,* 47 So.3d 767 (Ala.2008) (explaining standard of review of factual determinations required to be based on clear and convincing evidence). A juvenile court's factual findings in a judgment terminating parental rights based on evidence presented ore tenus are presumed correct. *R.B. v. State Dep't of Human Res.,* 669 So.2d 187 (Ala.Civ. App.1995)."

appealed.

*B.C. v. A.A.*, 143 So.3d 198, 203 (Ala.Civ. App.2013).

Section 12–15–319, Ala.Code 1975, provides, in pertinent part:

"(a) If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parent[ ] of a child [is] unable or unwilling to discharge [his or her] responsibilities to and for the child, or that the conduct or condition of the parent[ ] renders [him or her] unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parent[ ]. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child and to terminate the parental rights, the juvenile court shall consider the following factors including, but not limited to, the following:

"(1) That the parents have abandoned the child, provided that in these cases, proof shall not be required of reasonable efforts to prevent removal or reunite the child with the parents."

In the present case, the father testified that the Marengo County Department of Human Resources ("DHR") had initially taken the child from the parents when the child was four months old; the child was almost three years old at the time of the trial. Ginny Westbrook, a DHR social-service caseworker, testified that, since she was assigned the child's case in January 2015, she had attempted to contact the father to no avail. She testified that, despite the father's having been made aware that DHR had legal custody of the child, he had not attempted to contact her to obtain visitation with the child. Based on the foregoing, the juvenile court could have been clearly convinced that the father had abandoned the child and that he was unable or unwilling to discharge his parental responsibilities to and for the child. *See* § 12–15–301(1), Ala.Code 1975 (defining "abandonment"). Accordingly, we cannot conclude that the juvenile court erred in determining that the child was dependent, i.e., that there existed grounds to terminate the father's parental rights. *See Ex parte T.V.*, 971 So.2d 1, 4 (Ala.2007) ("For a finding of dependency, the court must consider whether there are grounds for terminating the parental rights.").

■ "[B]y abandoning [his] child, [the father] 'lost any due-process rights that would have required the juvenile court to explore other alternatives before terminating [his] parental rights.'" *L.L. v. J.W.*, 195 So.3d 269, 274 (Ala.Civ.App.2015) (quoting *C.C. v. L.J.*, 176 So.3d 208, 217 (Ala.Civ.App.2015)). Similarly, DHR was not required to use reasonable efforts to reunite the father and the child as a result of the father's abandonment of the child. § 12–15–319(a)(1). Hence, we reject the father's argument that the juvenile court erred by terminating his parental rights without first exhausting all other viable alternatives, such as using reasonable efforts to rehabilitate the father.

■ The father also argues that the juvenile court erred in admitting certain exhibits into evidence. However, the father waived his right to raise this issue on appeal because he did not object when the juvenile court admitted the exhibits during the trial. *See S.S. v. Jefferson Cty. Dep't of Human Res.*, 154 So.3d 1049, 1054 (Ala. Civ.App.2014) ("A '[t]imely objection is a condition precedent to raising an error on appeal. Where a timely objection to the admission of evidence is not made, the party wishing to exclude the evidence cannot be heard to complain.'" (quoting *Davis v. Southland Corp.*, 465 So.2d 397, 402 (Ala.1985))).

The father also states in his brief to this court that the child's best interests would not be served by terminating his parental rights. He fails, however, to formulate an argument supported by relevant authority in his brief. *Hudson v. Hudson*, 178 So.3d 861, 865 (Ala.Civ.App.2014), cert. denied, 178 So.3d 872 (Ala.2015); Rule 28, Ala. R.App. P. Furthermore, even if we consider the father's argument, we conclude that, because of the father's abandonment of the child, the juvenile court reasonably could have been clearly convinced that the child did not share any emotional relationship with the father such that the termination of their legal relationship would harm the child. C.E. testified that he and T.E. had gotten to know the child, that they were planning to adopt the child, and that they were capable of caring for the child. Therefore, we cannot conclude that the juvenile court erred in determining that it was in the child's best interests to terminate the father's parental rights in order to allow for the adoption of the child.

*Appeal No. 2140910*

On appeal, the paternal grandmother argues that the juvenile court erred in denying her motion to intervene. She claims that she had an unconditional right to intervene pursuant to Ala.Code 1975, § 30-3-4.1. That Code section provides grandparents a right to intervene in a termination-of-parental-rights proceeding to seek visitation. Even if that entire statute had not been declared unconstitutional, *see Weldon v. Ballow*, 200 So.3d 654, 668 (Ala.Civ.App.2015), the paternal grandmother did not seek to intervene to obtain visitation rights. Instead, she merely sought to intervene to be considered a viable alternative to termination of the father's parental rights. As noted above, however, the juvenile court was not required to determine if viable alternatives to termination of the father's parental rights existed. The paternal grandmother has failed to show that the juvenile court committed any error in denying her motion to intervene.

*Conclusion*

Based on the foregoing, the juvenile court's judgment terminating the father's parental rights to the child and denying the paternal grandmother's motion to intervene is affirmed.

2140910—AFFIRMED.

2140911—AFFIRMED.

THOMPSON, P.J., and PITTMAN and DONALDSON, JJ., concur.

THOMAS, J., concurs in the result, without writing.